## IN THE CIRCUIT COURT OF
## MONTGOMERY COUNTY, ALABAMA

**FELIX ARRINGTON and**  *
**MONICA ARRINGTON**  *
  *
    **Plaintiffs.**  *
  *
v.  *    **Civil Action NO. CV-06- 1050**
  *
**MERCK & CO., INC., a foreign**  *
**Corporation; ANNE BRANDON, an**  *
**Individual; LAMONDE RUSSELL, an**  *
**Individual; and fictitious Defendants**  *
**A, B, C & D, being those persons, firms**  *
**or Corporations whose fraud, scheme to**  *
**defraud, and/or other wrongful conduct**  *  **JURY TRIAL DEMANDED**
**caused or contributed to the Plaintiffs'**  *
**injuries and damages, and whose true**  *
**names and identities are presently**  *
**unknown to Plaintiff, but will be**  *
**substituted by amendment when**  *
**ascertained,**  *
  *
    **Defendants.**  *

2006 APR 14 PM 3: 43
FILED
CIRCUIT COURT OF
MONTGOMERY COUNTY

## <u>COMPLAINT</u>

    COMES NOW the Plaintiffs, **FELIX ARRINGTON** and **MONICA ARRINGTON**,

complaining of Merck & Co., Inc., individual sales representative Anne Brandon, Lamonde

Russell, and fictitious Defendants A, B, C & D, ("Defendants"), and for Plaintiffs' cause of

action against the Defendants states as follows:

### Statement Of The Parties

    1.    Plaintiff Felix Arrington is over the age of 19 years and is a resident of

Montgomery County, Alabama. Plaintiff Monica Arrington is over the age of 19, is the wife of

Felix Arrington, and is a resident of Montgomery County, AL



EXHIBIT
A

- 1 -

2.    Plaintiff Felix Arrington was prescribed and used the prescription medication VIOXX (Rofecoxib). This a civil action seeks monetary damages for personal injuries caused by the prescription medication VIOXX (Rofecoxib) ingested by Plaintiff Felix Arrington.

3.    Defendant Merck & Co., Inc. (hereinafter referred to as "Merck"), is incorporated in the State of New Jersey and has its principal place of business in White House Station, New Jersey.    At all times relevant herein, Merck was in the business of designing, testing, manufacturing, labeling, advertising, marketing, promoting, selling and distributing pharmaceuticals and other products, including VIOXX.    Merck does business by agent in Alabama and, on information and belief, at all times relevant, advertised, marketed, promoted, sold and/or distributed VIOXX in Montgomery County, Alabama.    Defendant Merck can be served through its registered agent:  Corporation Process Company, 2000 Interstate Park Drive, Suite 204, Montgomery, AL 36109.

4.    Based upon information and belief, Defendant Anne Brandon is a district sales manager for Defendant Merck, and is a resident of Tuscaloosa County, Alabama.    Defendant Anne Brandon can be served at her home address:  7 Lauderhill, Tuscaloosa,, AL 35406.

5.    Based upon information and belief, Defendant Lamonde Russell is a sales representative for Defendant Merck, and is a resident of Shelby County, Alabama.    Defendant Lamonde Russell can be served at his home address:  102 Amanda Place, Pelham, AL 35124.

6.    Fictitious Defendants A, B, C & D, are other legal persons (including retailers, pharmacies, sales representatives and manufacturers) who manufactured, labeled, advertised, marketed, promoted, sold and/or distributed VIOXX in Alabama.

7.     When the word "Defendants" is used herein, it is meant to refer to all real and fictitious Defendants mentioned in the style of this Complaint, all of whom are jointly and severally liable to Plaintiff, Felix Arrington, for Plaintiff's injuries.

8.     At all times material to this complaint, each Defendant acted as an agent for each of the other Defendants, within the course and scope of the agency, regarding the acts and omissions alleged herein, and are therefore jointly and severally liable to Plaintiff, Felix Arrington, for Plaintiff's injuries.

## Statement Of The Facts

9.     This is a civil action brought by the Plaintiff, Felix Arrington, who was prescribed and used the prescription medication VIOXX (Rofecoxib) and as a result suffered a heart attack.

10.     Personal jurisdiction and subject matter jurisdiction are appropriate in this court to all Defendants, as all Defendants have sold VIOXX in Alabama, in or near Montgomery County, either directly or by agent, with the actual or constructive knowledge that the VIOXX they sold would ultimately be ingested by the Plaintiff, Felix Arrington, in Montgomery County, the Plaintiff's, Felix Arrington, county of residence, and therefore all Defendants have thus availed themselves of this jurisdiction.

11.     The Defendants have sold VIOXX in Alabama, in or near Montgomery, either directly or by agent, with knowledge, actual or constructive, that the VIOXX they sold would ultimately be ingested by the Plaintiff, Felix Arrington, in Montgomery County, the Plaintiff's, Felix Arrington, county of residence, and that any damage or injury to Felix Arrington that may result from his use of VIOXX, including heart attack, would result from his ingestion of VIOXX in Montgomery County.   Thus venue is therefore proper in Montgomery County as to all

Defendants pursuant to Ala. Code Ann. § 6-3-2 (1975).    The claims of the Plaintiff, Felix Arrington, herein satisfy the jurisdictional amount of this Court.

12.     VIOXX (Rofecoxib) is a prescription drug designed to treat pain through reduced inflammation; VIOXX (Rofecoxib) is a COX-2 selective non-steroidal anti-inflammatory agent (NSAID).    Defendants did manufacture, design, package, market, sell and distribute this drug. The Defendants encouraged the use of this drug through an aggressive marketing campaign, including through its detail sales representatives and direct-to-consumers.    Defendants misrepresented the safety and effectiveness of this drug and concealed or understated its dangerous side effects. Defendants' actions combined and contributed to cause Plaintiff's, Felix Arrington, injuries, and thus are jointly and severally liable.

13.     At all times relevant hereto, Defendants actually knew of the defective nature of their product as herein set forth, yet continued to design, manufacture, market, distribute and sell their product so as to maximize sales and profits at the expense of the general public's health and safety in conscious disregard of the foreseeable harm caused by these products.    Defendants' conduct exhibits such an entire want of care as to establish that their actions were a result of fraud, ill will, recklessness, gross negligence or willful and intentional disregard to the Plaintiff's, Felix Arrington,  individual rights, and hence punitive damages are appropriate.

14.     Felix Arrington was prescribed and used the prescription medication VIOXX (Rofecoxib) for approximately 19 months and as a result suffered a heart attack on May 19, 2004. Felix Arrington ingested the prescription medication VIOXX (Rofecoxib) in Montgomery County, Alabama and the damage and injuries resulting from Felix Arrington's use of the prescription medication VIOXX (Rofecoxib) occurred in Montgomery, Alabama.

- 4 -

## COUNT I – STRICT LIABILITY

15.     Plaintiff re-alleges all prior paragraphs of this complaint as if fully set out herein.

16.     The pharmaceutical drug VIOXX (Rofecoxib), designed, manufactured, sold and/or supplied by Defendants, was placed into the stream of commerce in a defective and unreasonably dangerous condition, as designed, taking into account the utility of the product and the risk involved in its use.

17.     Further, the pharmaceutical drug VIOXX (Rofecoxib), designed, manufactured, distributed, sold and/or supplied by Defendants, was defective in its marketing due to inadequate warnings or instructions, independently and when coupled with its aggressive marketing campaign.

18.     The pharmaceutical VIOXX (Rofecoxib), designed, manufactured, distributed, sold, and/or supplied by Defendants, was defective due to inadequate testing.

19.     Additionally, Defendants failed to provide timely and adequate warnings or instructions after the manufacturer knew of the risk of injury from VIOXX (Rofecoxib). The defective nature of this product was the sole cause or was a significant contributing cause to the heart attack Felix Arrington suffered.

WHEREFORE, the Plaintiff, Felix Arrington, demands judgment against Defendants in such an amount as a jury deems reasonable, just and appropriate, and seeks interest and the cost of these proceedings.

## COUNT II – NEGLIGENCE

20.     Plaintiff, Felix Arrington, re-alleges all prior paragraphs of this complaint as if fully set out herein.

- 5 -

21.    Defendants had a duty to exercise reasonable care in the design, manufacture, marketing, sale, testing and/or distribution of VIOXX (Rofecoxib) into the stream of commerce. Defendants failed to exercise ordinary care in the design, manufacture, marketing, sale, testing and/or distribution of VIOXX (Rofecoxib) into the stream of commerce. Defendants knew or reasonably should have known that VIOXX (Rofecoxib) created an unreasonable risk of bodily harm or injury.

22.    Despite the fact that the Defendants knew or should have known that VIOXX (Rofecoxib) caused unreasonably, dangerous side effects which many users would be unable to remedy by any means, the Defendants continued to market VIOXX (Rofecoxib) to the consuming public when there were adequate and safer alternative methods of treatment or opportunities for more meaningful warnings.

23.    Defendants knew or should have known that consumers such as the Plaintiff, Felix Arrington, would foreseeably suffer injury as a result of the Defendants' failure to exercise ordinary care as described herein.    Defendants' negligence was a contributing cause of Plaintiff's, Felix Arrington, injuries and Plaintiff's, Felix Arrington, economic and non-economic loss.

WHEREFORE, Plaintiff, Felix Arrington, demands a money judgment against Defendants in such an amount as a jury deems reasonable, just and appropriate, and seeks interest and the cost of these proceedings.


## COUNT III – BREACH OF EXPRESS WARRANTY

24.    Plaintiff, Felix Arrington, re-alleges all prior paragraphs of this complaint as if fully set out hereto.

25.     Defendants, jointly and severally, made express representations to Plaintiff, Felix Arrington, relative to its product, VIOXX (Rofecoxib), directly and/or through his prescribing physician.

26.     Defendant Merck, by and through its detail sales representatives or through direct-to-consumer advertising, made representations regarding the safety and efficacy of its product, VIOXX (Rofecoxib).

27.     VIOXX (Rofecoxib) does not conform to the express representations made to the prescribing physicians and consuming public, including the Plaintiff, Felix Arrington.

28.     VIOXX (Rofecoxib) does not conform to the express representations made by Defendant Merck's agents/sales representatives.

29.     Defendants' conduct in this matter was the sole cause or was a significant contributing cause of injuries and damages suffered by Plaintiff, Felix Arrington.

WHEREFORE, Plaintiff, Felix Arrington, demands a money judgment against Defendants in such an amount as a jury deems reasonable, just and appropriate, and seeks interest and the cost of these proceedings.


## COUNT IV – BREACH OF IMPLIED WARRANTY

30.     Plaintiff, Felix Arrington, re-alleges all prior paragraphs of the Complaint as if fully set out herein.

31.     At the time Defendants marketed, sold and distributed VIOXX (Rofecoxib) for use by the general consuming public, including Plaintiff, Felix Arrington, Defendants knew of the use for which VIOXX (Rofecoxib) was intended and impliedly warranted the product to be of merchantable quality, and safe and fit for such use.

32.     Plaintiff, Felix Arrington, reasonably relied upon the skill and judgment of the Defendants as to whether VIOXX (Rofecoxib) was of merchantable quality, and safe and fit for its intended use.

33.     Contrary to such implied warranty, VIOXX (Rofecoxib) was not of merchantable quality, or safe or fit for its intended use, because the product was and is unreasonably dangerous and unfit for the ordinary purposes for which they were intended and used as described above.

34.     Defendants' conduct in this regard was a contributing cause of the Plaintiff's, Felix Arrington, injuries and damages.

WHEREFORE, Plaintiff, Felix Arrington, demands a money judgment against Defendants in such an amount as a jury deems reasonable, just and appropriate, and seeks interest and the cost of these proceedings.

.

## COUNT V – FRAUD

35.     Plaintiff, Felix Arrington, re-alleges all prior paragraphs of the Complaint as if fully set out herein.

36.     Defendants negligently, recklessly, intentionally and fraudulently made material misrepresentations that VIOXX (Rofecoxib) was safe and effective.  Defendants represented VIOXX (Rofecoxib) as safe so that the general consuming public, including Plaintiff, Felix Arrington, would rely upon said representations when purchasing said product.

37.     Prior to and following the introduction of VIOXX (Rofecoxib) into the market as a prescribable pharmaceutical medication, Defendants set in motion a campaign to market its product.  Defendants' representations made concerning VIOXX (Rofecoxib) as a safe and effective drug were made so that Plaintiff and the general consuming public would rely on said

representations and take this drug. In fact, Plaintiff, Felix Arrington, did rely on Defendants' representations in this regard.

38.    At the time Defendants made these representations, it was aware that these representations were false and/or made these representations with reckless disregard to their truth. As a result of Defendants' fraud and misrepresentation, Plaintiff, Felix Arrington, suffered injuries and damages.

WHEREFORE, the Plaintiff, Felix Arrington, demands a money judgment against Defendants in such an amount as a jury deems reasonable, just and appropriate, and seeks interest and the costs of these proceedings.

## COUNT VI – FRAUDULENT MISREPRESENTATION

39.    Plaintiff re-alleges and incorporates the original complaint and all prior paragraphs of this amended complaint as if fully set out herein.

40.    Merck trained its sales representatives, through programs such as the "VIOXX Obstacle Dodge Ball Program," the "Obstacle Response Guide for VIOXX" and "Top Ten Obstacle Handlers" to misstate and misrepresent the truly dangerous nature of VIOXX to prescribing physicians.

41.    These programs were specifically designed and promulgated by Defendant Merck to train Merck sales representatives such as the individual defendants Anne Brandon and Lamonde Russell to mislead prescribing physicians about the safety of VIOXX.

42.    These programs were specifically designed and promulgated by Merck to mislead prescribing physicians about the life threatening side effects, including myocardial infarction and sudden cardiac death, of VIOXX.

43.    Merck trained its sales representative force, including Anne Brandon and Lamonde Russell, to utilize its "Dodge Ball" and "Obstacle Avoidance" programs during the sales representatives' interactions with or "calls" upon prescribing physicians.

44.    These programs were utilized by sales representatives Anne Brandon and Lamonde Russell to "dodge" relevant safety questions by physicians to whom they sold VIOXX. Indeed, these programs provide specific responses and representations that are to be made by Merck sales representatives to physicians during sales calls or in response to physician questions. These Merck mandated responses misrepresented the safety of VIOXX.

45.    The VIOXX Obstacle Dodge Ball Program identifies and categorizes physician safety questions as "obstacles" to Merck's sales force. (Exhibit A). The "Dodge Ball" program specifically instructs sales representatives, including Anne Brandon and Lamonde Russell, to "dodge" these physician safety related questions/obstacles. Indeed, the last few pages of the "Dodge Ball" instruction manual simply state "DODGE," "DODGE," and "DODGE." *Id.* The safety questions to be "dodged" by sales representatives, including Anne Brandon and Lamonde Russell, include, inter alia, questions such as, "I am concerned about the cardiovascular effects of VIOXX;" and "The competition has been in my office telling me that the incidence of heart attacks is greater with Vioxx than Celebrex." *Id.*

46.    Additional sales representative guidelines provide specific answers to physician questions/obstacles (such as those noted above) that were to be recited by sales representatives, including Anne Brandon and Lamonde Russell. (Exhibits B and C). Exhibit C outlines the "Top Ten Obstacle Handlers" for sales representatives (Exhibit C). The top three "obstacles" listed on the sales guidelines are physician safety questions involving VIOXX related "Cardiovascular Events." (Exhibit C). Sales representatives, including Anne Brandon and Lamonde Russell,

were thereafter provided with specific misrepresentations to make to the concerned physicians about the safety of VIOXX. For example, bulletins from Merck to its sales representatives state, "in response to recent published reports about VIOXX on May 1, 2000, we provided you with an approved verbal response to use to address customers questions around the incidence rate of MI's [myocardial infarctions] on patients taking VIOXX…" (Exhibit D: Bulletin for Vioxx: New PIRs Relative to Vioxx GI Outcomes Research Study.) Sales representatives, such as Anne Brandon and Lamonde Russell, were therefore required to misrepresent that VIOXX does not increase the rate of myocardial infarctions' when compared with NSAID's. This misrepresentation is false and inaccurate, yet was intentionally, knowingly, recklessly, wantonly and/or negligently made to treating physicians, including the Plaintiff's, Felix Arrington, prescribing physician, by the individually named sales representatives, Anne Brandon and Lamonde Russell. (Exhibit C, Obstacle Response 38; and Exhibit E, page 7; "Bulletin for VIOXX")

47.    Merck's sales representatives, specifically Anne Brandon and Lamonde Russell, utilized the misrepresentations contained in the obstacle avoidance programs to mislead Plaintiff's, Felix Arrington, treating physician concerning the safety of VIOXX and the occurrence of life threatening side effects, such as myocardial infarctions, from the usage of VIOXX.

48.    Defendant Merck and the individually named sales representatives further misrepresented the safety of VIOXX to prescribing physicians by providing written literature to the doctors that contained false statements about the safety of VIOXX. Such literature would be forwarded to the physician who posed questions/obstacles to the sales representatives after the sales representatives had concluded their meeting with the physicians. Exhibit F is the specific

"In Response To Your Questions" follow-up literature that misrepresents the cardiovascular safety of VIOXX. (Exhibit F; " In Response To Your Questions: Cardiovascular System.")

49.    Sales representatives, including Anne Brandon and Lamonde Russell, were also ordered to send follow-up letters to physicians with whom they met who had posed questions/obstacles.    Exhibit G is an example of a form sales representative letter to a questioning physician that misrepresents that VIOXX does not increase the risk of adverse cardiovascular events in users.  (Exhibit G.)

50.    The culture of misrepresenting the safety of VIOXX by Merck and its sales representatives, including Anne Brandon and Lamonde Russell, was so prevalent that the false and misleading "Obstacle Responses" used by the sales force were manipulated and altered in response to media scrutiny concerning the cardiovascular safety of VIOXX.  (Exhibit H: "Action Required: Response to New York Times Article" and Exhibit I: "Action Required" REVISED Response to New York Times Article")   Merck sales representatives utilized such Obstacle Response Revisions to continually mislead prescribing physicians, including the Plaintiff's, Felix Arrington, prescribing physician, about the safety hazards of VIOXX.

51.    The underlying inducement for both Merck and its sales representatives, including Anne Brandon and Lamonde Russell, to make repeated misrepresentations to physicians about the safety of VIOXX was, and still is, money. The more doctors prescribing VIOXX, the more money Merck made. The more doctors the sales representatives, such as Anne Brandon and Lamonde Russell, cajoled into prescribing VIOXX, the more money and non-monetary bonuses the sales representatives received.  (Exhibits J: "Field Incentive Plan for VIOXX"; and K: "Field Incentive Plan for VIOXX.")  Thus, sales representatives, such as Anne Brandon and Lamonde Russell, had a financial interest in propagating and promulgating the false and misleading

- 12 -

information (i.e., obstacle responses) outlined above to as many prescribing physicians as possible, including the Plaintiff's, Felix Arrington, prescribing physician.

52.    Both the Plaintiff, Felix Arrington, and his prescribing physician reasonably relied, to their detriment, upon the false oral and written misrepresentations of Defendant Merck and its sales representatives, including Anne Brandon, and Lamonde Russell, concerning the safety of VIOXX and the absence of adverse cardiovascular events in users. Such reasonable reliance induced Plaintiff's, Felix Arrington, treating physician to prescribe him VIOXX and further induced the Plaintiff, Felix Arrington, to utilize the dangerous drug VIOXX. As a direct and proximate result of the Plaintiff's, Felix Arrington, usage of VIOXX he suffered a heart attack. Such event has caused the Plaintiff, Felix Arrington, great pain and suffering, mental anguish, expense and will shorten his life expectancy.

WHEREFORE, the Plaintiff, Felix Arrington, demands a money judgment against Defendants in such an amount as a jury deems reasonable, just and appropriate, and seeks interest and the costs of these proceedings.

## COUNT VII - LOSS OF CONSORTIUM

53.    Plaintiff re-alleges and restates those paragraphs above as if set forth fully herein.

54.    Alabama recognizes a spouse's claim for loss of consortium where, due to injury or death, a spouse has been deprived of the services of the other spouse. Loss of consortium encompasses two basic elements of the marital relationship: loss of support and loss of society, which includes companionship.

55.    At the time of his injuries and heart attack, Felix Arrington and Monica Arrington were legally married.

56.     Due to the injuries and heart attack of Felix Arrington and because of the wrongful conduct of Defendants, as more specifically described herein, the Plaintiff Monica Arrington has suffered and will continue to suffer the loss of services and consortium of her husband, Felix Arrington.

57.     Defendants' conduct rose to the level of conscious, wanton, reckless, and intentional disregard for the rights and safety of others, including Felix and Monica Arrington.

WHEREFORE, the Plaintiff, Monica Arrington, demands a money judgment against Defendant Merck in the form of compensatory and punitive damages, as a jury deems reasonable and just, plus the costs and expenses of these proceedings.

## DAMAGES

58.     Upon the trial of this case, it will be shown that Felix Arrington sustained injuries, including a heart attack, and damages as a direct and proximate result of Defendant's conduct. Monica Arrington was also injured and damaged as set forth above. Felix Arrington and Monica Arrington respectfully request the Court and jury to determine the amount of loss they have suffered and incurred, in the past and in the future, not only from a financial standpoint, but also in terms of anxiety, distress, fear, pain, and suffering secondary to any physical injury and damages.

59.     At all times relevant hereto, Defendant actually knew of the defective nature of VIOXX as herein set forth, yet continued to design, manufacture, market, distribute, and sell VIOXX so as to maximize sales and profits at the expense of the public health and safety, and in conscious disregard of the foreseeable harm caused by VIOXX. Defendant's conduct exhibits such an entire want of care as to establish that its actions were a result of fraud, ill-will,

recklessness, gross negligence, or willful or intentional disregard of Felix Arrington's individual rights Felix Arrington, therefore, is entitled to punitive damages from Defendant.

60.    Felix and Monica Arrington hereby request a trial by jury on all issues in this case and hereby tender the requisite jury fee simultaneously with this Complaint.

**WHEREFORE, PREMISES CONSIDERED**, Felix and Monica Arrington pray that Defendant be cited to appear and answer herein; that upon final trial, that they recover damages as set forth above from Defendant, including costs of court, pre-judgment and post-judgment interest at the legal rates, and punitive damages; and that they have such other and further relief, both general and special, at law and in equity, to which they may be justly entitled under the facts and attending circumstances.

## DEMAND FOR JURY TRIAL

### PLAINTIFFS HEREBY DEMAND TRIAL BY JURY ON ALL ISSUES

Signed this ___13___ day of ___April_____, 2006.

- 15 -

_____
ANDY D. BIRCHFIELD, JR. (BIR006)
J. PAUL SIZEMORE (SIZ004)
Attorneys for Plaintiff


**OF COUNSEL:**

BEASLEY, ALLEN, CROW, METHVIN,
PORTIS & MILES, P.C.
Post Office Box 4160
Montgomery, Alabama 36103-4160
Phone  (334) 269-2343
Fax     (334) 223-1236


EXHIBITS ATTACHED

# IN THE CIRCUIT COURT OF
## MONTGOMERY COUNTY, ALABAMA

FELIX ARRINGTON and      *
MONICA ARRINGTON      *
     *
     **Plaintiffs.**      *
     *
**v.**      *      Civil Action NO. CV-06- 1050
     *
MERCK & CO., INC., a foreign      *
Corporation; ANNE BRANDON, an      *
Individual; LAMONDE RUSSELL, an      *
Individual; ROBERT WALL, an      *
Individual; and fictitious Defendants      *
A, B, C & D, being those persons, firms      *
or Corporations whose fraud, scheme to      *
defraud, and/or other wrongful conduct      *      **JURY TRIAL DEMANDED**
caused or contributed to the Plaintiffs'      *
injuries and damages, and whose true      *
names and identities are presently      *
unknown to Plaintiff, but will be      *
substituted by amendment when      *
ascertained,      *
     *
     **Defendants.**      *

*2006 APR 14 PM 3:43*
*FILED CIRCUIT COURT OF MONTGOMERY COUNTY*

## SUMMONS

This service by certified mail of this summons is initiated upon written request of the Plaintiff's attorney pursuant to the Alabama Rules of Civil Procedure.

     **NOTICE TO: Merck & Co., Inc.**      D1
                   **The Corporation Company**
                   **2000 Interstate Park Drive, Suite 204**
                   **Montgomery, AL 36109**

The Complaint which is attached to this summons is important and you must take immediate action to protect your rights. You are required to mail or hand deliver a copy of a written Answer, either admitting or denying each allegation in the Compliant, to,

     **J. Paul Sizemore**
     **BEASLEY, ALLEN, CROW, METHVIN, PORTIS & MILES, P.C.**
     **Post Office Box 4160**
     **Montgomery, AL 36103-4106**

the attorney for the Plaintiffs. THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN THIRTY (30) DAYS FROM THE DATE OF DELIVERY OF THIS SUMMONS AND COMPLAINT AS EVIDENCED BY THE RETURN RECEIPT, OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT. You must also file the original of your Answer with the Clerk of this Court within a reasonable time afterward.

DATED: 5-1-06

Circuit Clerk

# IN THE CIRCUIT COURT OF
## MONTGOMERY COUNTY, ALABAMA

FELIX ARRINGTON and         *
MONICA ARRINGTON           *
                          *
      Plaintiffs.               *
                          *
v.                           *     **Civil Action NO. CV-06-** <u>1050</u>
                          *
MERCK & CO., INC., a foreign     *
Corporation; ANNE BRANDON, an   *
Individual; LAMONDE RUSSELL, an   *
Individual; ROBERT WALL, an     *
Individual; and fictitious Defendants   *
A, B, C & D, being those persons, firms   *
or Corporations whose fraud, scheme to   *
defraud, and/or other wrongful conduct   *     **JURY TRIAL DEMANDED**
caused or contributed to the Plaintiffs'   *
injuries and damages, and whose true   *
names and identities are presently   *
unknown to Plaintiff, but will be   *
substituted by amendment when   *
ascertained,                   *
                          *
      Defendants.             *

*2006 APR 14  PM 3: 43*
*FILED CIRCUIT COURT OF MONTGOMERY COUNTY*

## SUMMONS

This service by certified mail of this summons is initiated upon written request of the Plaintiff's attorney pursuant to the Alabama Rules of Civil Procedure.

> **NOTICE TO: Anne Brandon** 
>             **7 Lauderhill**
>             **Tuscaloosa, Al 35406**

The Complaint which is attached to this summons is important and you must take immediate action to protect your rights. You are required to mail or hand deliver a copy of a written Answer, either admitting or denying each allegation in the Compliant, to,

> **J. Paul Sizemore**
> **BEASLEY, ALLEN, CROW, METHVIN, PORTIS & MILES, P.C.**
> **Post Office Box 4160**
> **Montgomery, AL 36103-4106**

the attorney for the Plaintiffs.  THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN THIRTY (30) DAYS FROM THE DATE OF DELIVERY OF THIS SUMMONS AND COMPLAINT AS EVIDENCED BY THE RETURN RECEIPT, OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT.  You must also file the original of your Answer with the Clerk of this Court within a reasonable time afterward.

DATED:  5-10-06

Melissa Rittenaus

Circuit Clerk

IN THE CIRCUIT COURT OF
MONTGOMERY COUNTY, ALABAMA

| | | |
|---|---|---|
| FELIX ARRINGTON and<br>MONICA ARRINGTON | * | |
| | * | |
| Plaintiffs. | * | |
| | * | |
| v. | * | Civil Action NO. CV-06- 1050 |
| | * | |
| MERCK & CO., INC., a foreign | * | |
| Corporation; ANNE BRANDON, an | * | |
| Individual; LAMONDE RUSSELL, an | * | |
| Individual; ROBERT WALL, an | * | |
| Individual; and fictitious Defendants | * | |
| A, B, C & D, being those persons, firms | * | |
| or Corporations whose fraud, scheme to | * | |
| defraud, and/or other wrongful conduct | * | JURY TRIAL DEMANDED |
| caused or contributed to the Plaintiffs' | * | |
| injuries and damages, and whose true | * | |
| names and identities are presently | * | |
| unknown to Plaintiff, but will be | * | |
| substituted by amendment when | * | |
| ascertained, | * | |
| | * | |
| Defendants. | * | |

## SUMMONS

This service by certified mail of this summons is initiated upon written request of the Plaintiff's attorney pursuant to the Alabama Rules of Civil Procedure.

NOTICE TO:  Lamonde Russell    D3
                 102 Amanda Place
                 Pelham, AL 35124

The Complaint which is attached to this summons is important and you must take immediate action to protect your rights. You are required to mail or hand deliver a copy of a written Answer, either admitting or denying each allegation in the Compliant, to,

                J. Paul Sizemore
                BEASLEY, ALLEN, CROW, METHVIN, PORTIS & MILES, P.C.
                Post Office Box 4160
                Montgomery, AL 36103-4106

the attorney for the Plaintiffs.  THIS ANSWER MUST BE MAILED OR DELIVERED WITHIN THIRTY (30) DAYS FROM THE DATE OF DELIVERY OF THIS SUMMONS AND COMPLAINT AS EVIDENCED BY THE RETURN RECEIPT, OR A JUDGMENT BY DEFAULT MAY BE ENTERED AGAINST YOU FOR THE MONEY OR OTHER THINGS DEMANDED IN THE COMPLAINT.  You must also file the original of your Answer with the Clerk of this Court within a reasonable time afterward.

DATED:  5-1-06

Circuit Clerk

# COVER SHEET
# CIRCUIT COURT - CIVIL CASE
(Not For Domestic Relations Cases)

Date of Filing:
Month    Day    Year    Judge Code:

## GENERAL INFORMATION

IN THE CIRCUIT COURT OF __Montgomery County__, ALABAMA
(Name of County)

__Felix and Monica Arrington__ v. __Merck + Co., Inc.__
Plaintiff                              Defendant

First Plaintiff  ☐ Business  ☑ Individual      First Defendant  ☑ Business  ☐ Individual
                 ☐ Government ☐ Other                            ☐ Government ☐ Other

## NATURE OF SUIT: Select primary cause of action, by checking box (check only one) that best characterizes your action:

**TORTS: PERSONAL INJURY**
- ☐ WDEA - Wrongful Death
- ☐ TONG - Negligence: General
- ☐ TOMV - Negligence: Motor Vehicle
- ☐ TOWA - Wantonness
- ☑ TOPL - Product Liability/AEMLD
- ☐ TOMM - Malpractice-Medical
- ☐ TOLM - Malpractice-Legal
- ☐ TOOM - Malpractice-Other
- ☐ TBFM - Fraud/Bad Faith/Misrepresentation
- ☐ TOXX - Other: _____

**TORTS: PROPERTY INJURY**
- ☐ TOPE - Personal Property
- ☐ TORE - Real Property

**OTHER CIVIL FILINGS**
- ☐ ABAN - Abandoned Automobile
- ☐ ACCT - Account & Nonmortgage
- ☐ APAA - Administrative Agency Appeal
- ☐ ADPA - Administrative Procedure Act
- ☐ ANPS - Adults in Need of Protective Services

**OTHER CIVIL FILINGS (cont'd)**
- ☐ MSXX - Birth/Death Certificate Modification/Bond Forfeiture Appeal/ Enforcement of Agency Subpoena/Petition to Preserve
- ☐ CVRT - Civil Rights
- ☐ COND - Condemnation/Eminent Domain/Right-of-Way
- ☐ CTMP - Contempt of Court
- ☐ CONT - Contract/Ejectment/Writ of Seizure
- ☐ TOCN - Conversion
- ☐ EQND - Equity Non-Damages Actions/Declaratory Judgment/Injunction Election Contest/Quiet Title/Sale For Division
- ☐ CVUD - Eviction Appeal/Unlawful Detainer
- ☐ FORJ - Foreign Judgment
- ☐ FORF - Fruits of Crime Forfeiture
- ☐ MSHC - Habeas Corpus/Extraordinary Writ/Mandamus/Prohibition
- ☐ PFAB - Protection From Abuse
- ☐ FELA - Railroad/Seaman (FELA)
- ☐ RPRO - Real Property
- ☐ WTEG - Will/Trust/Estate/Guardianship/Conservatorship
- ☐ COMP - Workers' Compensation
- ☐ CVXX - Miscellaneous Circuit Civil Case

ORIGIN (check one):  ☑ F INITIAL FILING   ☐ A APPEAL FROM DISTRICT COURT   ☐ O OTHER: _____
                     ☐ R REMANDED         ☐ T TRANSFERRED FROM OTHER CIRCUIT COURT

HAS JURY TRIAL BEEN DEMANDED?  ☑ YES  ☐ NO    Note: Checking "Yes" does not constitute a demand for a jury trial. (See Rules 38 and 39, Ala.R.Civ.P, for procedure)

RELIEF REQUESTED:  ☑ MONETARY AWARD REQUESTED    ☐ NO MONETARY AWARD REQUESTED

ATTORNEY CODE:
S 1 7 0 0 4    4/13/06    _Paul_
               Date      Signature of Attorney/Party filing this form

MEDIATION REQUESTED:  ☐ YES  ☐ NO  ☑ UNDECIDED





"I am concerned with the potential edema that occurs with Vioxx."

Confidential—Disclosure to
Unauthorized Persons forbidden
by Order of the United States District
Court of Southern District of Illinois



EXHIBIT

A

LEH 0115297



# Dodge Ball

## VIOXX®
### (rofecoxib)



### OBSTACLE 2

"I am concerned with dose-related
increases in hypertension
with Vioxx."

Confidential—Disclosure to
Unauthorized Persons forbidden
by Order of the United States District
Court of Southern District of Illinois

LEH 0115298





"Can Vioxx be used in patients using low dose aspirin?"

Confidential—Disclosure to
Unauthorized Persons forbidden
by Order of the United States District
Court of Southern District of Illinois

LEH 0115299





"I am concerned about the
cardiovascular effects of Vioxx?"

Confidential—Disclosure to
Unauthorized Persons forbidden
by Order of the United States District
Court of Southern District of Illinois

LEH 0115300



# VIOXX®
## (rofecoxib)



"The competition has been in my
office telling me that the incidence
of heart attacks is greater with
Vioxx than Celebrex."

Confidential—Disclosure to
Unauthorized Persons forbidden
by Order of the United States District
Court of Southern District of Illinois

LEH 0115301



# VIOXX®
## (rofecoxib)



"There is no difference between
Vioxx and Celebrex, why
should I use Vioxx?"

Confidential—Disclosure to
Unauthorized Persons forbidden
by Order of the United States District
Court of Southern District of Illinois

LEH 0115302







"Vioxx cannot be used for longer than five days when treating patients for acute pain?"

Confidential—Disclosure to
Unauthorized Persons forbidden
by Order of the United States District
Court of Southern District of Illinois

LEH 0115303





"I use Celebrex. I'm concerned about the safety profile with Vioxx?"

Confidential—Disclosure to
Unauthorized Persons forbidden
by Order of the United States District
Court of Southern District of Illinois

LEH 0115304





"I understand the new COXIB,
Mobic, was just approved."

Confidential—Disclosure to
Unauthorized Persons forbidden
by Order of the United States District
Court of Southern District of Illinois

LEH 0115305





"Searle/Pfizer just presented me with data which showed Celebrex 800 mg daily did not exhibit dose dependent increases in side effects compared to the OA and RA doses, and that Vioxx exhibited dose dependent increases in side effects with the 50 mg dose."

Confidential—Disclosure to
Unauthorized Persons forbidden
by Order of the United States District
Court of Southern District of Illinois

LEH 0115306





"The new narcotic data looks great, now I'll use Vioxx for all my acute pain patients."

Confidential—Disclosure to
Unauthorized Persons forbidden
by Order of the United States District
Court of Southern District of Illinois

LEH 0115307



# VIOXX®
## (rofecoxib)



"I can't use Vioxx because the HMO's require the patients to be on generic NSAIDS first."

Confidential—Disclosure to
Unauthorized Persons forbidden
by Order of the United States District
Court of Southern District of Illinois

LEH 0115308



# VIOXX®
## (rofecoxib)



# DODGE!

Confidential—Disclosure to
Unauthorized Persons forbidden
by Order of the United States District
Court of Southern District of Illinois

LEH 0115309



# VIOXX®
## (rofecoxib)



# DODGE!

Confidential—Disclosure to
Unauthorized Persons forbidden
by Order of the United States District
Court of Southern District of Illinois

LEH 0115312



# VIOXX ®
## (rofecoxib)



# DODGE!

Confidential—Disclosure to
Unauthorized Persons forbidden
by Order of the United States District
Court of Southern District of Illinois

LEH 0115311



# VIOXX®
## (rofecoxib)



# DODGE!

Confidential—Disclosure to
Unauthorized Persons forbidden
by Order of the United States District
Court of Southern District of Illinois

LEH 0115310

# OBSTACLE
# RESPONSE GUIDE
# VIOXX®



CONFIDENTIAL – SUBJECT TO
PROTECTIVE ORDER IN
ABRUSLEY V. MERCK, et al.
(02-0196 W.D. La )



EXHIBIT
B

MRK-ABR B 0002256

## INFLAMMATORY MANAGEMENT BULLETIN: OBSTACLE RESPONSE GUIDE

**TO:**
Field Sales Team for VIOXX®

**PURPOSE:**
To provide you with the initial Obstacle Response Guide. Over time we will be providing you updates and modifications to this resource.

**CONTENT:**
You are all aware of the process identified for resolving obstacles:
- Pause
- Clarify the Question
- Verify your Understanding of the Issue
- Resolve & Return to the Core Messages

Let's take just a moment to focus on the clarification of the issue. As we launch VIOXX®, we have entered into a very competitive marketplace. Our competition has been aggressively "pre-positioning" our product. This is likely to generate obstacles or issues that need to be resolved before some customers are comfortable prescribing the product for appropriate patients. It will be critical that we clarify the issue prior to attempting to resolve. Many times, the customer may be vague in their statement, such as "I understand VIOXX® has some safety concerns at higher doses." Statements like this could apply to three different issues, methotrexate, warfarin or edema. Unless you clarify, you might respond regarding edema when the physicians concern was warfarin. This approach would actually result in you creating an additional obstacle for yourself.

Some customers may be hesitant to state their true concerns and will use obstacles as a "smokescreen". They hope to distract or redirect you in an attempt to end a product discussion. Again, clarification will be critical. One honest obstacle effectively handled is a tremendous opportunity. Obstacles should be viewed as selling opportunities. Essentially the customer is saying, "I would prescribe if only I knew...." and when you resolve this question, you have earned the right to ask for appropriate patients.

A few final quotes regarding obstacles and the obstacle handling step in selling:

"Obstacles are those frightful things you see when you take your eyes off your goals" – *Unknown*

"The difference between the right words and the almost right words, is the difference between a lightening bolt and a lightening bug." – *Mark Twain*

"Wise people take the complicated and make it simple and understandable." – *Einstein*

"No problem can stand the assault of sustained thinking." – *Voltaire*

"Chance favors the prepared mind." – *Louis Pasteur*

Remember the final step in effective obstacle resolution is to return to the core selling messages of the product. As you review this Obstacle Response Guide, take time to practice both resolving the issue, transition back to your messages and closing the call.

**ACTION REQUIRED:**
We will be counting on you for two important steps in this process:
1. Identify the issues you are encountering on territory that require a response
2. Effectively implement the responses to resolve the concerns expressed by your customers.

Good Luck and GOOD SELLING!

CONFIDENTIAL – SUBJECT TO
PROTECTIVE ORDER IN
ABRUSLEY V. MERCK, et al.
(02-0196 W.D La.)

MRK-ABR B 0002257

Obstacles / Responses

CONFIDENTIAL - SUBJECT TO
PROTECTIVE ORDER IN
ABRUSLEY V. MERCK, et al.
(02-0196 W.D. La )

MRK-ABR B 0002258

> ### 1. "There is no difference between VIOXX® and Celebrex. Why should I use VIOXX®?"

**Clarify:** Doctor, while they both work by inhibiting COX-2, I would like to point out some key clinical areas of distinction that may be important to you and your patients.

## INDICATIONS

Once daily VIOXX® is indicated for the relief of the signs and symptoms of OA, management of acute pain in adults and treatment of primary dysmenorrhea, representing all of the indications that were submitted to the FDA for approval of VIOXX®.

Celecoxib is indicated for the signs and symptoms of OA and RA.

**Reference:**
A&A Training Program ⇒ Module 5 (NSAIDs)
VIOXX® PI ⇒ Indications and Usage (V22)
Celecoxib PI ⇒ Indications and Usage (C23)

## CONTRAINDICATIONS

Both VIOXX® and celecoxib are contraindicated in patients who are allergic to them, aspirin or other NSAIDs. Once daily VIOXX® is not contraindicated in patients with sulfonamide allergies, commonly known as sulfa allergies.

In contrast, celecoxib <u>is</u> contraindicated in patients with allergic-type reactions to sulfonamides. This contraindication is unique to celecoxib, due to its molecular structure, and is **not a class effect**. Sulfonamide allergies are common drug allergies in the US population and allergic reactions can range from mild to more serious.

Once daily VIOXX® offers simplicity - simplified prescribing without having to worry about a sulfonamide allergy contraindication.

CONFIDENTIAL – SUBJECT TO
PROTECTIVE ORDER IN
ABRUSLEY V. MERCK, et al.
(02-0196 W.D. La.)

MRK-ABR B 0002259

Reference:
VIOXX® PI ⇒ Contraindication (V23)
Celecoxib PI ⇒ Contraindication (C24)

## DOSING

Doctor, VIOXX® offers dosing simplicity of once daily dosing for all
indications – the relief of the signs and symptoms of OA,
management of acute pain in adults, and the treatment of primary
dysmenorrhea.  With celecoxib, each time you see an OA patient you
must decide whether to prescribe it once a day or twice a day.
VIOXX® also offers the option to increase the dose to 25 mg once
daily for OA patients who need additional relief.  Celecoxib has one
dose – 200 mg, and its label states that no additional efficacy is seen
with 200 mg BID.

Reference:
VIOXX® PI ⇒ Dosage and Administration ⇒ Osteoarthritis (V65) and
Management of Acute Pain and Treatment of Primary Dysmenorrhea
(V66)
Celecoxib PI ⇒ Dosage and Administration ⇒ Osteoarthritis (C54)

## METABOLISM

Once daily VIOXX® is metabolized  primarily through cytosolic
enzymes in the liver.  Unlike once daily VIOXX®, celecoxib is
metabolized through the cytochrome P450 system.

(Remember to provide appropriate balancing information on use in
hepatic insufficiency and hepatic effects.)

Reference:
VIOXX® PI ⇒ Clinical Pharmacology ⇒ Pharmacokinetics ⇒
Metabolism (V7)

CONFIDENTIAL - SUBJECT TO
PROTECTIVE ORDER IN
ABRUSLEY V. MERCK, et al.
(02-0196 W.D. La.)

2

## COMPREHENSIVE CLINICAL STUDIES

Once daily VIOXX® has been comprehensively studied.  In OA patients, once daily VIOXX® was compared to diclofenac in two 1-year studies.  The endoscopy studies were six-month studies.  We have data on serious upper GI events out to one year.  This was the most comprehensive clinical program ever run by Merck.  Let me share some of the data with you...

Transition to strength, safety and simplicity messages.

**Reference:**
VIOXX® PI $\Rightarrow$ Clinical Studies $\Rightarrow$ OA (V16)

CONFIDENTIAL – SUBJECT TO
PROTECTIVE ORDER IN
ABRUSLEY V. MERCK, et al.
(02-0196 W.D. La.)

MRK-ABR B 0002261

> ## 2. "I can't use VIOXX® with patients being treated with methotrexate."

Doctor, once daily VIOXX® is <u>not</u> contraindicated in patients receiving methotrexate. No dosage adjustments of once daily VIOXX® and no change in the standard monitoring for methotrexate are required for patients taking methotrexate with once daily VIOXX®.

If probed further:
Doctor, according to the product circular for once daily VIOXX®, at doses of 75 mg (which is 3 to 6 times the OA therapeutic dose), once daily VIOXX® increased plasma concentrations of methotrexate by 23%. At 24 hours post dose or at the trough period, a similar proportion of patients receiving VIOXX® or placebo had methotrexate plasma concentrations below the measurable limit. According to the methotrexate label, methotrexate-toxicity is believed to be more dependent on time of exposure rather than peak levels. Again doctor, no dosage adjustments of once daily VIOXX® and no change in the standard monitoring for methotrexate are required for patients taking methotrexate with once daily VIOXX®.

Transition to strength, safety and simplicity messages.

**Reference:**
VIOXX® PI ⇒ Precautions ⇒ Drug Interactions ⇒ Methotrexate (V47)

CONFIDENTIAL – SUBJECT TO
PROTECTIVE ORDER IN
ABRUSLEY V MERCK, et al.
(02-0196 W.D. La )

4

### 3. "Is VIOXX® contraindicated in patients being treated with warfarin?"

No.  Once daily VIOXX® is not contraindicated in patients taking warfarin and no change in standard monitoring is required. According to the package insert, when therapy with once daily VIOXX® is initiated or changed, patients should be monitored for INR* values.  Doctor, the recommendation for once daily VIOXX® is the same recommendation for warfarin when any new therapy is initiated.

Transition to strength, safety and simplicity messages.

If further probed, refer to the PI:
In a 21-day multiple-dose study in healthy individuals stabilized on warfarin (2 to 8.5 mg daily), administration of VIOXX® 25 mg QD was associated with mean increases in INR* of approximately 8% (range of INR on warfarin alone, 1.1 to 2.2; range of INR on warfarin plus VIOXX®, 1.2 to 2.4). Somewhat greater mean increases in INR of ~11% (range of maximum INR on warfarin alone, 1.5 to 2.7; range of maximum INR on warfarin plus VIOXX®, 1.6 to 4.4) were also seen in a single dose PK screening study using a 30-mg dose of warfarin and 50 mg of VIOXX®.  Standard monitoring of INR values should be conducted when therapy with VIOXX® is initiated or changed, particularly in the first few days, in patients receiving warfarin or similar agents.

(Submit a PIR if appropriate.)

Transition to strength, safety and simplicity messages.

**Reference:**
VIOXX® PI ⇒ Precautions ⇒ Drug Interactions ⇒ Warfarin (V51)

*INR – International Normalized Ratios.  This is a standardized way of measuring the degree of anti-coagulation produced by warfarin.

CONFIDENTIAL – SUBJECT TO
PROTECTIVE ORDER IN
ABRUSLEY V. MERCK, et al.
(02-0196 W.D. La.)

MRK-ABR B 0002263

> ## 4. "I'm concerned about the potential edema that occurs with VIOXX®."

**Clarify:**
**What are your specific concerns regarding edema?**

**If the physician's concern is the overall incidence of edema with once daily VIOXX®, then respond:**
Doctor, edema is reported with all NSAIDs and is thought to result from cyclooxygenase inhibition in the kidney. Clinical trials with once daily VIOXX® 12.5 and 25 mg have shown renal effects such as edema similar to those observed with comparator NSAIDs. In these studies, the incidence rates for lower extremity edema were as follows: (In the AE table, point to row on edema under Body As A Whole)

VIOXX® 12.5 mg or 25 mg once daily - 3.7%
Ibuprofen 2400 mg – 3.8%
Diclofenac 150 mg –3.4%
Placebo – 1.1%

In clinical trials, the effects of edema were mild and there were no discontinuations due to edema.

**If the physician's concern is the dose related increase of edema with once daily VIOXX® 50 mg, then respond:**

Doctor, let me explain where the use of 50 mg is recommended. 50 mg is recommended for use in acute pain in adults. It has been studied for up to 5 days. In these studies, the renal effects of once daily VIOXX®– such as edema – were generally similar to comparator NSAIDs.

The 50 mg dose is not recommended for OA. However, in clinical trials with once daily VIOXX® 50 mg up to 6 months, there was a higher incidence of lower extremity edema.

CONFIDENTIAL – SUBJECT TO
PROTECTIVE ORDER IN
ABRUSLEY V. MERCK, et al
(02-0196 W.D. La.)

MRK-ABR B 0002264

Finally, let me point out that edema is reported with all NSAIDs and is thought to result from cyclooxygenase inhibition (COX-2) in the kidney.

Transition to strength, safety and simplicity messages.

**Reference:**
VIOXX® PI ⇒ Adverse Reactions ⇒ OA ⇒ Table and second paragraph (V59)
VIOXX® PI ⇒ Precautions ⇒ Fluid Retention and Edema (V35)

CONFIDENTIAL – SUBJECT TO
PROTECTIVE ORDER IN
ABRUSLEY V. MERCK, et al.
(02-0196 W.D. La.)

**5. "It is my understanding that VIOXX® was denied an indication for RA by the FDA."**

**Clarify:**  Doctor, what is your true concern?

**If physician mentions denial of an RA indication, respond:**
Doctor, Merck was not denied any indications.  Once daily VIOXX® is indicated for relief of the signs and symptoms of OA, management of acute pain in adults, and for the treatment of primary dysmenorrhea. These represent all of the indications that Merck submitted to the FDA for the approval of once daily VIOXX®.

*If appropriate, state:* Last month when I was in, you stated that the majority of your arthritis patients suffer from OA.  I would like for us to discuss how once daily VIOXX® could benefit these patients.

Transition to strength, safety and simplicity messages.

---

(After close: If you need information on the use of VIOXX® in RA, I can submit a PIR.)

**If the physician is concerned about the anti-inflammatory effect, see obstacle #6.**

**Reference:**
VIOXX® PI ⇒ Indications and Usage (V22)
VIOXX® PI ⇒ Clinical Pharmacology ⇒ Mechanism of Action (V3)

CONFIDENTIAL -- SUBJECT TO
PROTECTIVE ORDER IN
ABRUSLEY V. MERCK, et al.
(02-0196 W.D. La.)

8

## 6. "VIOXX® is not an anti-inflammatory drug."

Doctor, the Mechanism of Action section of the package insert for once daily VIOXX® clearly states: "VIOXX® is a nonsteroidal anti-inflammatory drug that exhibits anti-inflammatory, analgesic, and anti-pyretic activities in animal models." Once daily VIOXX® 12.5 and 25 mg reduced the signs and symptoms of OA as effectively as 2400 mg of ibuprofen. Also, once daily VIOXX® produced significant reductions in joint stiffness upon first awakening in the morning. Doctor, as you know, morning stiffness is one indicator of inflammation.

In addition, let me point out that in the label it also states "because of the anti-inflammatory effects of VIOXX®, the pharmacological activity of VIOXX® in reducing inflammation, and possibly fever, may diminish the utility of these diagnostic signs in detecting infectious complications of presumed noninfectious, painful conditions."

Doctor, would you agree that once daily VIOXX® has anti-inflammatory effects?

Transition to strength, safety and simplicity messages.

**Reference:**
VIOXX® PI ⇒ Clinical Pharmacology ⇒ Mechanism of Action (V3)
VIOXX® PI ⇒ Clinical Studies ⇒ OA (V16)
VIOXX® PI ⇒ Precautions ⇒ General (V31)

CONFIDENTIAL—SUBJECT TO
PROTECTIVE ORDER IN
ABRUSLEY V. MERCK, et al.
(02-0196 W.D. La )

9

MRK-ABR B 0002267